PEDRO, The (ENGLEHART v.). See Case No. 4,489.

PEDRO, The (MALONE v.). See Case No. 8,995.

## Case No. 10,902.

### In re PEEBLES.

### Ex parte WATKINS.

[2 Hughes, 394; 13 N. B. R. 149.] [1]

District Court, E. D. Virginia. April and June, 1875.

PLEDGE — SECURITIES DEPOSITED WITH NOTE — GENERAL LIEN—EQUITABLE RULES IN BANKRUPTCY COURT—HOMESTEAD EXEMPTION.

1. Where collaterals are deposited for securing a particular note in a banking company, by a shareholder who also owes it other notes, the collaterals consisting in part of the shares of the company, and in part of other securities, and the charter and by-laws of the company give a general lien upon the shares of its shareholders for all debts due by them to the company, and the maker of the notes afterwards becomes a bankrupt, *held*, that the company, upon the shares of stock pledged, has a general lien for the satisfaction of all the notes of the shareholder.

2. The remaining securities are bound for the other notes due, on the principle of equity that the equities being equal between the company and the general creditors in bankruptcy of the maker of the notes, the possession of the securities by the company gives it preference.

3. A bankruptcy court must rule as a court of equity would do upon such a pledge of collaterals, unless it can be proved that the pledge of them was made by the bankrupt under circumstances that would render the preference void under the 35th section of the general bankruptcy act (Rev. St. U. S. §§ 5128, 5129).

4. The homestead exemption, provided by sections 1, 5, 16, 17, c. 183, of the Code of Virginia, is good against the lien of an execution on personal property, and a court of bankruptcy will grant the homestead exemption in goods on which the execution lien attached before the adjudication of the bankrupt, and this certainly where there was no levy or sale.

In bankruptcy. On the 3d day of November, 1874, Lemuel Peebles, the bankrupt, made his negotiable note to the Petersburg Savings and Insurance Company for eighteen hundred dollars, expressing in the body of the note that he deposited 168 shares of the capital stock in the said company, twenty shares of the Atlantic, Mississippi and Ohio Company, and a bond to him of J. W. Pool for $916.52,

as collateral security, "with authority to sell the same at public or private sale, or otherwise, at the option of the directors of the said company on the non-performance of this promise." On the 21st day of December, 1874, he filed his petition in bankruptcy, and was thereupon duly adjudicated a bankrupt. On the 7th day of January, 1875, Thomas G. Watkins was appointed his assignee. At the time of making the negotiable note mentioned, Peebles owed also a stock note to the company for $1,848, also a note of $1,250 indorsed by another person, also three notes amounting to $1,000, indorsed by three other persons, also a note of $2,300, and one of $900, indorsed by another person. The total value of the collaterals deposited with the $1,848 note was $4,020, by estimate.

The charter of the Petersburg Savings and Insurance Company contains the following provisions: "The said company shall have power to make and ordain such ordinances and regulations, and generally to do any act and thing necessary to carry into effect this act, or to promote the object and design of the corporation. Every stockholder not in debt to the company, may, at pleasure, in person or by attorney, assign his stock on the books of the company, or any part thereof, not being less than a whole share, but no stockholder indebted to the company shall assign or make a transfer of his stock, or receive a dividend until such debt is paid or secured to the satisfaction of the board of directors." The by-laws of the company contain these provisions: "In all cases of transfer of stock, all debts due or to become due to the company shall first be paid or satisfactorily secured. The interest of any stockholder of this company shall be liable for the payment of any and all debts which may be due from him at any time to the company, either as principal or indorser, and in case there shall be more than one debt, the board of directors shall have the power to prescribe which one or more of such debts shall be paid out of the stock of the indebted member."

The assignee files his petition here, charging that the company intends to make sale of the collaterals it holds from Peebles, pay themselves the note of $1,848 secured by them, and apply the surplus to the liquidation of the remaining notes in which Peebles is interested. The assignee complains that his rights will thereby be prejudiced, claiming that the surplus of the proceeds arising from the sale of the collaterals, after payment of the $1,848, now belongs of right to him as a part of the assets of the estate distributable pro rata among all general creditors of Peebles. The question is, whether the banking company has a lien upon the collaterals for the satisfaction of the other notes of Peebles due to it after the payment of the petitioner's note (for $1,848), for which they were expressly pledged. This question has been much litigated. The Roman law gave a lien upon the chattels pledged for one

---

[1] [Reported by Hon. Robert W. Hughes, District Judge, and here reprinted by permission. 13 N. B. R. 149, contains only a partial report.]

debt for the satisfaction of all the debts held by the pledgee against the pledgor. But the rule of the common law of England and of this country is different. Lord Mansfield, in Green v. Farmer, 4 Burrows, 2221, stated the law of the subject in the following terms: "The convenience of commerce and natural justice are on the side of liens, and, therefore, of late years, courts lean that way; (1st), where there is an express contract; (2d), where it is implied from the usage of trade; or (3d) from the manner of dealing between the parties in the particular case; (4th), where the defendant acts as a factor." This is still the law; that is to say, there is no lien at common law which gives the holder of pledged personal property a lien upon it beyond the especial object for which it was pledged, except in the cases mentioned by Lord Mansfield. Equity, indeed, often extends the lien beyond the special object, when the general principles governing in courts of equity allow it. But in courts of law the rule is laid down in 4 Burrows. This condition of the law of the subject has made it necessary to resort to statutory provisions wherever the lien is sought to be secured; and it has become a practice to give by statute this lien, in cases where it did not exist at common law. The present case does not fall within any of the exceptions mentioned in Green v. Farmer; and if the banking company has a lien at all upon the collaterals in its hands beyond the note for $1,848, it has it only by virtue of its charter and by-laws. Do these give the lien which it claims? They certainly do in terms as to the 168 shares of the company stock, and the only question is, will this court enforce the provisions of the charter and by-laws? The decisions in this country construing the charters and by-laws of corporations on this subject of liens are conflicting, and if there were no particular precedents imperative upon this court there might be room for doubt what the decision in the present case ought to be. But the supreme court of the United States has passed upon this question in Bank of George-town v. Laird, 2 Wheat. [15 U. S.] 390, and in Brent v. Bank of Washington, 10 Pet. [35 U. S.] 596. It has decided that "the lien of a bank, under its charter, on its shares, for a debt due from their owner, is superior in equity to a lien acquired from the owner by a third person, and is not waived simply by taking other security for the debt."

In the case at bar it was contended that the taking of the collaterals expressly as security for the $1,848 note, and of indorsers as specific security on the other notes, was a virtual waiver of the lien which the banking company might otherwise have had on the collaterals for the security of the other notes. But the law is otherwise. Two points were decided in 2 Wheat. [15 U. S.] 390, where the case was essentially the same as the present one, viz.: (1st.) That the provisions of the com-

pany's charter giving a general lien upon its shares are valid; and (2d), that taking other security for the debts to the bank does not waive the lien given by the charter on the stock of the bank itself. Under that, as well as under the well-settled general law, I must hold that the charter and by-laws of the Petersburg Savings and Insurance Company did create a lien upon the shares of the company owned by Peebles beyond the note for which the collaterals deposited by Peebles were given for the satisfaction of all the other notes due by Peebles to the bank. It is not necessary to decide whether the by-laws of this company are valid in claiming power for the directors of the company "to prescribe which one or more of several debts due the bank shall be paid out of the stock of the indebted member." As between the company and Peebles himself, this power may be valid, but as between the bank and third persons interested in the apportionment, I incline to the opinion that this provision of the 11th by-law of the company is ultra vires and invalid. See Bullard v. National Eagle Bank, 18 Wall. [85 . U. S.] 589. If this were a suit at law it is plain that the provisions of the charter would be held to give a lien upon the 168 shares of the capital stock [of the company] [2] for all the notes of Peebles, but there was no lien on the other collaterals for any other notes than that for $1,848. If it were a suit in equity the equities of the stockholders of the banking company on one hand and of the other creditors of Peebles on the other being equal, and the company having the legal title, the court would have to decree for the company as to all the collaterals.

The only question is, whether the same principles obtain in a court of bankruptcy as in a court of equity. I see nothing in this case to induce a different decision in bankruptcy from such as would have to be given if the case were before the court as a court of equity. It is not alleged or pretended that there were any circumstances attending the deposit of these collaterals with the company by Peebles which make it a case of preference under the 35th section of the bankruptcy law. There is no allegation or proof that there was any contemplation of bankruptcy by Peebles at the time, and knowledge of insolvency and intention to defraud the act on the part of the company. Unless such circumstances are alleged and proved, I do not see how this court, as a court of bankruptcy, can give any other decision than that which it would be bound to give if the case were before it on its equity side. My opinion is, that the charter of the company and its by-laws give the company a lien upon the shares of stock which it holds, for the payment first of the debt for which they were expressly pledged, and after

[2] [From 13 N. B. R. 153.]

that, of any and all other debts of Peebles to the company due or to become due which it held at the time.

I am also of the opinion that the equities of the company in the remaining collaterals being equal to that of the other creditors of Peebles, and the company having legal title and possession, these other collaterals should follow the same course. I will give an order accordingly. See [Bank of Georgetown v. Laird] 2 Wheat. [15 U. S.] 390; [Brent v. Bank of Washington] 10 Pet. [35 U. S.] 596; 2 P. Wms. 207; Ang. & A. Corp. §§ 570–575, and cases there cited; 4 Burrows, 2221; Story, Eq. Jur. § 1034; 7 East. 224; 2 Kent, Comm. 584. The cases in [Bank v. Lauier] 11 Wall. [78 U. S.] 374, and [Bullard v. National Eagle Bank] 18 Wall. [85 U. S.] 594, turn upon the special provisions of the law of congress relating to national banks, which are different from the provisions of the charter of the Petersburg Savings and Insurance Company, and do not affect the decisions in [Bank of Georgetown v. Laird] 2 Wheat. [15 U. S.] 390, and [Brent v. Bank of Washington] 10 Pet. [35 U. S.] 596.

This cause was again heard, on the 2d June, 1875, on the bankrupt's petition for a homestead exemption, as to which the following were the facts of the case: At the November term, 1874, of the circuit court of the city of Petersburg, T. L. Johnson sued out an execution against the goods and chattels of one Nelson and Lemuel Peebles (this bankrupt) jointly, which went into the sergeant's hands on the 5th December, 1874. On the 21st December, 1874, Peebles filed his petition in bankruptcy, and was thereupon duly adjudicated a bankrupt. Afterwards, to wit, on the 30th December, 1874, the execution was levied by the sergeant upon certain personalty of Peebles, specified in the return of the sergeant made at the March rules of 1875, which personalty would otherwise be exemptable in lieu of a homestead exemption to said Peebles.

[W. W. Crump and Meade Haskins, appeared for assignee, Thomas G. Watkins, who also took part in the argument.

[Wood Bouldin, Jr., for the banking company.] 8

HUGHES, District Judge. The only question arising on the branch of the case now before me is, whether the bankrupt's claim of exemption in lieu of homestead is good against an execution lien, where the levy was not made until after the adjudication in bankruptcy. As the levy after that time was void, see Bump, Bankr. (9th Ed.) p. 217, and cases there cited (the estate of the bankrupt having passed into the custody of the federal court bound by liens, but free from all interference by the officers of other courts), the more direct question is, whether the homestead is good in this case against the lien of an execution. This question must be decided upon the laws of Virginia, for the homestead is given by the national bankruptcy law only in cases where it is given by the law of each state. The constitution of Virginia provides that "every householder or head of a family shall be entitled to hold, exempt from levy, seizure, garnisheeing, or sale under any execution, order, etc., real or personal property not exceeding $2000 in value," to be selected by himself. It authorizes the legislature to provide how this benefit may be obtained and enjoyed, by any law which "shall not defeat or impair the benefit" of the provision. In pursuance of this authority, the legislature has provided, with some minuteness, the manner in which the benefit shall be claimed and secured in respect to the householder's real estate; but has not made such explicit special provisions as to personalty, doubtless from the impracticability of doing so. But it has provided, in respect to personalty, in sections 16, 17, c. 183, of the Code, how the householder may, after execution sued out and levied, and even after sale, secure from sale, or after sale, any personalty which he may select and designate as an exemption, to the amount allowed by law. Section 5 of the same chapter of the Code, provides in effect that though this personalty may be subject to the lien of mortgages, deeds of trust, or executions, the "claim of the homestead" shall be good against such "last-named liens." It seems to me, therefore, to be trifling with the subject to contend, in view and in despite of the express language of section 1, art. 11, of the state constitution, and sections 1, 5, 16, 17, c. 183, of the Code, that the lien of an execution, whether levied or not, certainly when not legally levied, is good against the homestead. Courts, of course, have no more right than private citizens to disregard the statute law of the land, and the arbitrary individual judgment of a judge can be no more rightly exercised against a plainly written and constitutional law than that of a private citizen.

The goods mentioned in the pleadings in this case must be set apart to the bankrupt, notwithstanding the execution lien held by T. L. Johnson. See Payne v. Drewe, 4 East, 523; Angel v. Smith, 9 Ves. 335; Taylor v. Carryl, 20 How. [61 U. S.] 594; Hagan v. Evans, 10 Pet. [35 U. S.] 400; Harmar v. Dennie, 3 Pet. [28 U. S.] 292; Weswall v. Sampson, 14 How. [55 U. S.] 52; Davis v. Anderson [Case No. 3,623].

8 [From 13 N. B. R. 149.]

PEEBLES (COLLINS v.). See Case No. 3,-017.